IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-HC-2185-D

NEGASH MALEDE,                )
                              )
            Petitioner,       )
                              )
      v.                      )      **ORDER**
                              )
BRICK TRIPP,                  )
                              )
            Respondent.       )
                              )

On August 15, 2013, Negash Malede ("Malede" or "petitioner"), a District of Columbia Code Offender confined at Rivers Correctional Institution in Winton, North Carolina, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [D.E. 1]. On July 22, 2014, the court reviewed the petition pursuant to 28 U.S.C. § 2243 and allowed it to proceed [D.E. 3]. On September 5, 2014, respondent filed a motion for summary judgment [D.E. 8], a memorandum in support of the motion [D.E. 9], and several exhibits [D.E. 9-1–9-14]. On September 8, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Malede about the motion, the consequences of failing to respond, and the response deadline [D.E. 10]. Malede did not timely respond to the motion for summary judgment.

On November 6, 2014, Malede filed a motion requesting to know the status of his action and seeking the appointment of counsel [D.E. 11]. On January 14, 2015, the court denied Malede's request for counsel and ordered respondent to serve the motion for summary judgment again and to file with the court a certificate of service [D.E. 12]. The court told Malede that he could file a response to the motion for summary judgment by February 13, 2015, and that the failure to do so

could result in the court granting summary judgment against him. See id. On February 4, 2015, Malede filed a response in opposition to the motion for summary judgment [D.E. 14], including a 27-page exhibit [D.E. 14-1] concerning sentencing-computation data and various courses that Malede completed while in federal custody. As explained below, the court grants respondent's motion for summary judgment.

I.

On May 6, 1996, Malede was convicted in the District of Columbia Superior Court of stalking, threatening to injure a person, assault with intent to kill while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license. Pet. [D.E. 1] 1. He was sentenced to a minimum term of 172 months and a maximum term of 43 years. [D.E. 9-12] 1.

On January 11, 2005, Malede received his initial parole hearing from the United States Parole Commission ("Commission"). Mem. Supp. Mot. Summ. J. [D.E. 9] 2; Hr'g Summ. [D.E. 9-4] 1–4. The Commission denied parole and ordered a three-year reconsideration hearing for January 2008. Mem. Supp. Mot. Summ. J. 2; Notice of Action [D.E. 9-5] 1.

On January 8, 2008, the Commission considered Malede for parole. Mem. Supp. Mot. Summ. J. 2; Hr'g Summ. [D.E. 9-6] 1–4. The Commission again denied parole and ordered a three–year reconsideration hearing in January 2011. Mem. Supp. Mot. Summ. J. 2; Notice of Action [D.E. 9-7] 1.

On December 1, 2009, the Commission again considered Malede for parole and applied the 1987 D.C. Board of Parole Regulations ("the 1987 Regulations"). Mem. Supp. Mot. Summ. J. 2; Hr'g. Summ. [D.E. 9-8] 1–5; Notice of Action [D.E. 9-9] 1. Malede's point score under the applicable guidelines was zero points, thereby suggesting parole in the ordinary case. Mem. Supp. Mot. Summ. J. 3; Notice of Action [D.E. 9-9] 1. The Commission, however, found that a departure

2

from the guidelines was warranted and again denied parole. Mem. Supp. Mot. Summ. J. 3; Notice of Action [D.E. 9-9] 1. The Commission ordered reconsideration in December 2012. Notice of Action [D.E. 9-9] 1.

On November 13, 2012, the Commission conducted another parole hearing and again applied the 1987 Regulations. Mem. Supp. Mot. Summ. J. 3; Hr'g Summ. [D.E. 9-10] 1–3; Notice of Action [D.E. 9-11] 1. Malede's point score under the guidelines again was zero points. Mem. Supp. Mot. Summ. J. 3; Notice of Action [D.E. 9-11] 1. The Commission again departed from the guidelines and denied parole. Mem. Supp. Mot. Summ. J. 3; Notice of Action [D.E. 9-11] 1. The Commission set Malede's next parole hearing for November 2015. Notice of Action [D.E. 9-11] 1.

On May 9, 2011, Malede, who was confined at the Federal Correctional Institution in Petersburg, Virginia, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Columbia. See Petition, Malede v. Reilly, No. 1:11-cv-877-JEB (D.D.C. May 9, 2011), [D.E. 1]. Malede claimed that the Commission violated the Ex Post Facto Clause of the United States Constitution in its application of parole guidelines to his case during his December 1, 2009 parole hearing. Id. at 8. On May 13, 2011, Malede's petition was transferred to the United States District Court for the Eastern District of Virginia. Malede v. Wilson, No. 2:11-cv-322-AWA-TEM (E.D.Va. May 13, 2011), [D.E. 2]. On January 24, 2012, the Eastern District of Virginia dismissed the petition on the merits. Final Order [D.E. 9-13]; see also R & R [D.E. 9-12]. Malede appealed, and the United States Court of Appeals for the Fourth Circuit denied a certificate of appealability and dismissed the appeal. Mem. Supp. Mot. Summ. J. 3–4; Malede v. Wilson, 472 F. App'x 261, 262 (4th Cir. 2012) (per curiam) (unpublished).

In his instant petition, Malede makes four arguments in support of parole: (1) the Commission violated the statutes and regulations governing parole eligibility for District of

3

Columbia Code offenders; (2) the Commission violated Malede's right to due process under the Fifth Amendment; (3) the Commission violated the Ex Post Facto Clause; and (4) Malede was denied parole because of his race. See Pet. 2–3; Resp. Opp'n Mot. Summ. J. [D.E. 14] 2–3.

## II.

In considering respondent's motion for summary judgment, the court views the evidence in the light most favorable to Malede and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–49. The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In evaluating affidavits submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay) described in such affidavits. See Fed. R. Civ. P. 56(c); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

## A.

Respondent argues that Malede's section 2241 petition constitutes an abuse of the writ of habeas corpus. Mem. Supp. Mot. Summ. J. 4–5. The abuse of the writ doctrine mandates dismissal

of claims presented in habeas petitions if the claims were raised, or could have been raised, in an earlier petition. See, e.g., McCleskey v. Zant, 499 U.S. 467, 489 (1991); Noble v. Barnett, 24 F.3d 582, 585 (4th Cir. 1994). Respondent must identify petitioner's writ history, identify the claims that appear for the first time, and allege that petitioner abused the writ. See, e.g., McCleskey, 499 U.S. at 494. The burden then shifts to petitioner to show cause for failing to raise the relevant claim earlier and actual prejudice resulting from the claim. Id. "If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he . . . can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." Id. at 494–95.

Here, Malede alleged in his 2011 section 2241 petition that the Commission violated the Ex Post Facto Clause in denying his request for parole in 2009. The United States District Court for the Eastern District of Virginia dismissed the petition with prejudice and the Fourth Circuit declined to issue a certificate of appealability. Malede's present petition references his most recent parole denial, again alleges an Ex Post Facto claim, and adds three additional claims. Although Malede asserts additional claims in his present petition, he still makes the same fundamental argument and seeks the same relief. Malede's previous section 2241 petition was adjudicated on the merits. Malede could have included the three new claims in his 2011 previous petition. Malede has not shown cause and prejudice for not raising his new claims in his 2011 petition. See, e.g., Noble, 24 F.3d at 585–88. Moreover, Malede has not shown that a fundamental miscarriage of justice will result from this court's failure to entertain his new claims. Accordingly, the petition is successive, and Malede has abused the writ of habeas corpus. Thus, the court dismisses the petition as an abuse of the writ.

Alternatively, Malede's claims fail on the merits. First, Malede contends that the Commission's decision denying him parole violated the statutes and regulations for District of

5

Columbia Code offenders by exceeding his guidelines range of 172 months' imprisonment. See Pet. 2–3. On August 5, 1998, the Commission assumed the District of Columbia Board of Parole's authority, and the Commission now has exclusive jurisdiction to grant or deny parole to all D.C. felony offenders convicted in D.C. courts. See National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (1997) (codified as amended at D.C. Code § 24-131(a)(1)); Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir. 1998); Blunt-Bey v. Perdue, No. 5:13CV94, 2013 WL 6073496, at *11 (N.D. W. Va. Nov. 18, 2013) (unpublished); Fletcher v. U.S. Parole Comm'n, No. 5:11-HC-2065-BO, 2013 WL 171254, at *4 (E.D.N.C. Jan. 16, 2013) (unpublished); Sellmon v. Reilly, 551 F. Supp. 2d 66, 68–69 (D.D.C. 2008).

D.C. Code § 24-404(a) establishes the criteria for authorizing release on parole for District of Columbia Offenders. It states:

> Whenever it shall appear to the United States Parole Commission ("Commission") that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be, the Commission may authorize his or her release on parole upon such terms and conditions as the Commission shall from time to time prescribe.

D.C. Code § 24-404(a); see also 28 C.F.R. § 2.73. In exercising its discretion, the Commission must determine "whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with the public safety." Dunmore v. Francis, No. 5:06CV137, 2009 WL 775466, at *10 (N.D. W. Va. Mar. 20, 2009) (unpublished) (quoting White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994)); see also 28 C.F.R. § 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the U.S. Parole Commission."). Therefore, a prisoner's parole eligibility date determines only when the Commission has the discretion to

6

release a prisoner, not whether the prisoner must be paroled. See, e.g., Gooding v. Marberry, 341 F. App'x 173, 174 (7th Cir. 2009) (per curiam) (unpublished) ("The District of Columbia's parole regime, far from conferring . . . an entitlement [to release upon fulfillment of certain criteria], is entirely discretionary."); cf. Ellis v. District of Columbia, 84 F.3d 1413, 1415 (D.C. Cir. 1996); Price v. Barry, 53 F.3d 369, 370–71 (D.C. Cir. 1995) (per curiam) ("[T]he District of Columbia Code under no circumstances compels the Board to grant a prisoner release."). Under the statutory scheme, the Commission properly exercised its discretion. Thus, Malede's first claim fails.

Next, Malede argues that the Commission violated due process by keeping him in custody even though he has met "all institutional requirements of parole." Pet. 3. The Constitution, however, does not create a due process right to be conditionally released before the expiration of a valid sentence. See, e.g., Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Moreover, D.C. law does not provide a liberty interest in parole. Where the decision whether to grant parole is discretionary, a prisoner "cannot claim entitlement and therefore a liberty interest in the parole release." Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012); Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) (en banc); see Ellis, 84 F.3d at 1415, 1420; Price, 53 F.3d at 370–71. Thus, to the extent Malede believes that the Due Process Clause entitles him to parole, the claim fails.

To the extent Malede claims that the Commission failed to afford him the process due, the claim fares no better. "Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself." Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981). In the context of parole, "the procedures required are minimal." Burnette, 687 F.3d at 181

7

(quotation omitted). Due process simply requires that parole authorities "furnish to the prisoner a statement of its reasons for denial of parole." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996) (quotation omitted).

On November 13, 2012, the Commission conducted Malede's parole hearing. Notice of Action [D.E. 9-11] 1. The Commission noted that Malede's Grid Score was zero, and that "[t]he guidelines indicate that parole should be granted at this time." Id. Nonetheless, the Commission advised Malede that it found that a departure from the guidelines was warranted for the following reasons:

> [T]he Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score because details of the offense reveal you attempted to stab the victim with a knife, stalked her for a period of a month and then shot her. The shooting involved unusual cruelty in that you shot the victim once in the leg and after she fell to the ground, you shot her four more times, the last shot fired when you were approximately one foot away. Additionally, you have demonstrated a record of repeated negative institutional behavior indicating that your assaultive behavior has continued while incarcerated.

Id. The Commission's reasons meet the minimal due process to which Malede is entitled and warrant the departure. See e.g., Blunt-Bey, 2013 WL 6073496, at *13–14; Bailey v. Fulwood, 945 F. Supp. 2d 62, 64 (D.D.C. 2013); Fletcher, 2013 WL 171254, at *5. Accordingly, Malede's due process claim fails.

Next, Malede argues that the Commission violated the Ex Post Facto Clause by failing to apply the proper guidelines. See U.S. Const. art. I, § 9, cl. 3. Malede was arrested on April 23, 1994, and contends that, in considering whether to grant him parole, the Commission improperly applied the supplemented regulations pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 instead of the 1987 Guidelines. See Resp. Opp'n Mot.

Summ. J. [D.E. 14] 1–6. As discussed, on August 5, 1998, the Commission assumed the District of Columbia Board of Parole's authority and received exclusive jurisdiction to grant or deny parole to all D.C. felony offenders convicted in D.C. courts. Before August 5, 1998, the D.C. Parole Board conducted parole hearings for D.C. Code offenders and applied the 1987 Regulations. See, e.g., Sellmon, 551 F. Supp. 2d at 68–69. Between 1998 and 2000, the Commission drafted new regulations and guidelines (the "2000 Guidelines") that it applied to offenders who received an initial parole hearing after August 5, 1998. See id. at 72. In Sellmon, the United States District Court for the District of Columbia held that applying the 2000 Guidelines to D.C. Code offenders who committed their crimes before August 5, 1998, may violate the Ex Post Facto Clause. Id. at 88–89.

Malede committed his crime and was sentenced before August 5, 1998. Malede has been considered for, and denied, parole four times. See [D.E. 9-5, 9-7, 9-9, 9-11]. The Commission first denied Malede parole in 2005. See [D.E. 9-5]. The Ex Post Facto Clause prohibits retroactive increases in punishment for a crime after its commission. See, e.g., Collins v. Youngblood, 497 U.S. 37, 42–43 (1990). A retroactively-applied parole guideline or regulation "may violate the Ex Post Facto Clause if it creates 'a significant risk' of 'a longer period of incarceration than under the earlier rule.'" Sellmon, 551 F. Supp. 2d. at 84 (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)) (emphasis omitted). In order to establish an Ex Post Facto violation, Malede must show that the Commission applied the 2000 Guidelines and that the 2000 Guidelines pose a "substantial risk" of a longer period of incarceration than the 1987 Regulations. Id.

The court rejects Malede's Ex Post Facto claim because Malede has not shown that any application of the 2000 Guidelines at his 2005 or 2008 parole hearing posed a substantial risk of a

9

lengthier incarceration.[1] At both the 2005 and 2008 hearings, the Commission based its decision and departure on Malede's unusual cruelty to the victim. See [D.E. 9-5, 9-7]. "[W]hen the reason for departing given under a new regime of parole guidelines was also available under the old regime, there can be no ex post facto violation." Cole v. Fulwood, 879 F. Supp. 2d 60, 64 (D.D.C. 2012) (emphasis omitted). Because "unusual cruelty to victim" was an available reason to deny parole under both the 1987 Regulations and the 2000 Guidelines, any application of the 2000 Guidelines to Malede "did not result in a 'significant risk of prolong[ed] incarceration.'" Id. (quoting Garner, 529 U.S. at 251); see Sellmon, 551 F. Supp. 2d at 95; R & R [D.E. 9-12] 6–7. Thus, the claim fails.

Finally, Malede asserts that he was denied parole based on his race. Malede's conclusory allegations fail. See e.g., Fuller v. Ga. State Bd. of Pardons & Paroles, 851 F.2d 1307, 1310 (11th Cir. 1988) (per curiam); Chapman v. Reynolds, 378 F.Supp. 1137, 1140 (W.D. Va. 1974).

### III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 8] and DISMISSES with prejudice Malede's petition for a writ of habeas corpus under 28 U.S.C. § 2241 [D.E. 1] as an abuse of the writ. Alternatively, the court DISMISSES the petition on the merits. The court DENIES a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). The clerk shall close the case.

SO ORDERED. This 23 day of July 2015.

JAMES C. DEVER, III
Chief United States District Judge

---

[1] The Commission applied the 1987 Guidelines at Malede's 2009 and 2012 parole hearings. See [D.E. 9-9, 9-11].